**STATE of Missouri,
Plaintiff-Respondent,**

v.

**Fidel STEWART, Defendant-Appellant.**

No. 66692.

Supreme Court of Missouri,
En Banc.

June 25, 1985.

Michael Radosevich, Columbia, for defendant-appellant.

Mark S. Siedlik, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

SEILER, Senior Judge.

Appellant Fidel Stewart was convicted by a jury of one count of robbery in the first degree, § 569.020, RSMo (1978) and one count of kidnapping, § 565.110, RSMo (1978). The circuit court of the city of St. Louis entered judgment on the jury's verdict and sentenced appellant to serve two concurrent fifteen year sentences. After affirmance in the court of appeals, this Court transferred the case to examine

whether the trial court committed reversible error by overruling defendant's challenge for cause of venirewoman Thompson during voir dire, thus forcing defendant to use a peremptory strike to remove her. Reversed and remanded.

The pertinent portions of the voir dire examination of Mrs. Thompson went as follows:

MS. MURPHY: (for the defense) You have heard what we said about the burden of proof in this case, and the fact that my client is presumed innocent. Would you expect him to testify in this matter?

MRS. THOMPSON: I would think so.

\* \* \*

MS. MURPHY: Mrs. Thompson, do you feel he should have to get up here again and deny it?

MRS. THOMPSON: I would just like to hear his side of the story.

MS. MURPHY: By asking to hear his side of the story—and this is a very common belief—do you realize you're putting a burden on him to prove something?

MRS. THOMPSON: I like eye contact with the people I am expected to be judging, you know, and that is—

MS. MURPHY: If you had to go back and the judge sent you back right now and said, "I want a verdict in this case," what would your verdict be?

MRS. THOMPSON: Not guilty.

MS. MURPHY: Do you understand, then, that not having heard any evidence in the case you would have to return a verdict of not guilty?

MRS. THOMPSON: True

MS. MURPHY: That it's the State's duty to put on the case?

MRS. THOMPSON: Yes.

MS. MURPHY: Now my client may or may not testify in this matter. If he doesn't testify, what are you going to think?

MRS. THOMPSON: I couldn't say—I could not honestly say.

MS. MURPHY: Well, you might think, well he is trying to hide something.

MRS. THOMPSON: Possibly, yes.

MS. MURPHY: So the bottom line is you would have some real problems if the defendant didn't testify?

MRS. THOMPSON: I think so.

MS. MURPHY: And you would more apt to think he was guilty if he didn't testify, being really fair, right?

MRS. THOMPSON: Well, if you put it that way, yes.

\* \* \*

MR. SWITZER: (for the state) These were matters that were brought up during the course of Miss Murphy's questioning, and first, Mrs. Thompson, I would like to ask you a few questions. I think you made a statement to the effect that he may be hiding something if he doesn't testify. You would have some problem if he didn't testify. You do realize the State has the burden of proof and we have to prove the elements of the crime, nothing more or less, just the elements; and, again, the State has to come forward with its case, meaning the State must prove him guilty beyond a reasonable doubt, and that means he could just sit there and not do anything, and if that occurs, again, the State must prove him guilty, and if the State does that, then he is guilty, if that is the way you have your verdict.

Now do you understand, then, that he doesn't have to testify if he doesn't want to?

MRS. THOMPSON: Yes, sir, but I would like to hear him say something in his own defense.

MR. SWITZER: I can appreciate that, but I'm sure a lot of people feel like that, that you would like him to say something; but if he doesn't, can you still be fair and an impartial juror and just judge the State's case?

MRS. THOMPSON: Oh, I think so.

\* \* \*

MR. SWITZER: If the State presented its case and you were not convinced beyond a

reasonable doubt, then you would find the defendant not guilty, correct?

MRS. THOMPSON: Yes.

MR. SWITZER: And that's whether or not he testifies?

MRS. THOMPSON: Yes.

MR. SWITZER: Just so you understand. If the State does prove every element beyond a reasonable doubt, no matter whether or not he testifies or not, he would be guilty, do you understand that?

MRS. THOMPSON: Yes, if the evidence and—

MR. SWITZER: Therefore, you feel that even if he doesn't present a case, that you will judge just the State's case on its own merits, its own faith, along with her cross-examination?

MRS. THOMPSON: Yes, right.

MR. SWITZER: So, therefore, you feel that it wouldn't be necessary that he testify?

MRS. THOMPSON: No, once again—

MR. SWITZER: You would like it?

MRS. THOMPSON: Yes.

MR. SWITZER: Okay.

\*     \*     \*

MS. MURPHY: Mrs. Thompson, I am unclear on what (sic) you stand on on the burden of proof. On the one hand, you say you don't expect him to testify, but you would prefer it?

MRS. THOMPSON: Yes.

MS. MURPHY: But I also thought I heard you say, when Mr. Switzer was asking you questions, that you would judge it by—that you would take into consideration—or you would expect us to put on some type of evidence, is that right?

MRS. THOMPSON: His evidence that Mr. Switzer presented and then your part of it, you know. You get what I am trying to say?

MS. MURPHY: What I hear you say is what evidence we put on.

MRS. THOMPSON: Yes. If I were in the chair myself, I would like to be able to speak in my defense, you know.

MS. MURPHY: Now you understand that he has entered a plea of not guilty, and when he did that, by doing that he has denied every element of that offense, he has already denied that offense. Now I understand, when you say you would prefer to hear from him, a lot of people feel that way. What I am worried about is that when somebody says, "I prefer, I would like to hear from them," and they don't hear from them, how is that going to affect you—in other words, the fact that you want to hear from them and then you don't. Are you going to think, "Well, you know, he is probably guilty" or, you know, "If I had heard from him, maybe I would, you know, find him not guilty"? How's that going to affect you if you don't hear from him?

MRS. THOMPSON: It's going to depend on what I hear, you know, in the long run. I don't know what else I can say. I think I can be fair. I have got four kids and like the other lady said, a lot of things happen but nobody ever does it, and, you know, I think I have also been pretty fair with them.

MS. MURPHY: Do you understand it's different in a court of law than in a family situation?

MRS. THOMPSON: Yes.

MS. MURPHY: In family situations you don't always get that presumption of innocence, depending on your past record with the family and so forth—right? Here, we are not talking about a spanking or sending somebody to their room, we are talking about a man's liberty.

MRS. THOMPSON: True

MS. MURPHY: And I understand your analogy, but it's not a home situation, it's not the discipline of a child we are talking about. We are taking away a person's freedom.

MRS. THOMPSON: Right.

MS. MURPHY: Okay. Even though you would prefer to hear him testify, will you hold it against him if he doesn't testify?

MRS. THOMPSON: It depends. He has to have the opportunity to do so, and if it were I and things looked against me, I would choose to do so. You get what I mean?

MS. MURPHY: Will you hold it against him if he doesn't testify?

MRS. THOMPSON: No, that's his privilege if he doesn't want to. I suppose that's the privilege not to do so. But well, like you say, there's two different sides—civil and criminal—or two different things, and I am more or less going by civil, you know, whatever you call that, but—

MS. MURPHY: Well, you know, in civil cases, each side puts on evidence, and it's whichever side you believe. In a criminal case, the burden is one hundred percent on the State. So, you see, there's a distinction. Because in a criminal case, we're talking about a man's liberty, which is much more precious than any property you take away from somebody.

MRS. THOMPSON: Right.

"In determining the qualifications of a prospective juror, the trial court has very wide discretion, and the court's ruling will not be disturbed on appeal unless it is clearly against the evidence and constitutes a clear abuse of discretion." *State v. Treadway*, 558 S.W.2d 646, 649 (Mo. banc 1977), *cert. denied*, 439 U.S. 838, 99 S.Ct. 124, 58 L.Ed.2d 135 (1978).

■ An accused must be afforded a full panel of qualified jurors before he is required to expend his peremptory challenges; denial by a trial court of a legitimate request by an accused to excuse for cause a partial or prejudiced venireperson constitutes reversible error. *State v. Thompson*, 541 S.W.2d 16 (Mo.App.1976); *State v. Lovell*, 506 S.W.2d 441 (Mo. banc 1974).

■ In determining when a challenge for cause should be sustained, each case must be judged on its facts. *State v. Harris*, 425 S.W.2d 148, 155 (Mo.1968). "Errors in the exclusion of potential jurors should always be made on the side of caution." *State v. Carter*, 544 S.W.2d 334, 338 (Mo. App.1976).

■ Although Mrs. Thompson was several times cut off both by the state and the defense before she could complete her attempted exposition of her views, it is evident that she was honestly answering the questions and that she believed that if a defendant were innocent she would expect him to testify and his failure to do so would be suspicious.

At the outset of the questioning, Mrs. Thompson, in response to the question "Would you expect him to have to testify in this matter?", answered "I would think so." When asked if she felt "he should have to get up here again and deny it?", she replied, "I would just like to hear his side of the story." Asked what she would think if defendant did not testify, she said, "I couldn't say—I could not honestly say"; that as to whether she might think he was trying to hide something, "Possibly, yes"; that whether the "bottom line" if he did not testify was that she would have some real problems, she said "I think so", and finally, "being really fair", would she be more apt to think he was guilty if he did not testify, she answered, "Well, if you put it that way, yes."

Counsel for the state then undertook to remove the serious doubt which the foregoing placed on Mrs. Thompson's qualifications. He commenced by pointing out that the state must prove the defendant guilty beyond a reasonable doubt, and asked Mrs. Thompson directly whether she understood, then, "that he doesn't have to testify if he doesn't want to?" Mrs. Thompson replied, "Yes, sir, but I would like to hear him say something in his own defense." Counsel for the state then asked two more questions about the state's having to prove the elements of its case beyond a reasonable doubt, which Mrs. Thompson said she understood, but, then, again when asked directly, "So, therefore, you feel that it wouldn't be necessary that he testify?", the

response was "No. But, once again—" Counsel for the state interrupted with "You would like it?", to which Mrs. Thompson said, "Yes."

Counsel for the defense then said she (referring to herself) was unclear as to Mrs. Thompson's position on the burden of proof, that Mrs. Thompson on one hand said she did not expect him to testify, but on the other that she would prefer it. After several inconclusive exchanges, Mrs. Thompson said, "If I were in the chair myself, I would like to be able to speak in my defense, you know"; that "It's going to depend on what I hear, you know, in the long run".

The interrogation concluded with counsel for the defense asking whether, even though Mrs. Thompson would prefer to hear defendant testify, would she hold it against him if he did not, to which Mrs. Thompson said, "It depends. He has to have the opportunity to do so, and if it were I and things looked against me, I would choose to do so. You get what I mean?"

Counsel's response to the question was to ask Mrs. Thompson, "Will you hold it against him if he doesn't testify?", to which the prospective juror answered, "No, that's his privilege if he doesn't want to. I suppose that's the privilege not to do so. But well, like you say, there's two different sides—different—civil and criminal—or two different things, and I am more or less going by civil, you know, whatever you call that, but—".

No questions were asked by the trial court.

Mrs. Thompson never unequivocally stated that she would not draw any inference of guilt from defendant's failure to testify. At best, from respondent's standpoint, her position was that while it was his privilege not to testify if he did not want to, she would like to hear him say something in his own defense, that is what she would do if "things looked against" her. On the other hand, as already pointed out, at one point, Mrs. Thompson said flatly that if defendant did not testify she would be more apt to

think he was guilty, and even when she was answering counsel for the state about her understanding that the state was required to establish guilt beyond a reasonable doubt and that she would judge the state's case on its own merits, she concluded by saying she still would like for the defendant to testify. Despite the opposing tugs and pulls from respective counsel in their questioning, Mrs. Thompson never abandoned her belief that an innocent man would testify in his own behalf. We are left with the definite impression that a defendant's failure to testify would, per se, be an indication to her that he was guilty of the offense charged and a factor which she would consider in arriving at a verdict.

The trial court should have sustained defendant's challenge for cause. It was reversible error to fail to do so. *State v. Scott*, 482 S.W.2d 727 (Mo. banc 1972).

■ This case, as does *State v. Hopkins*, 687 S.W.2d 188 (Mo. banc 1985), illustrates the wisdom of trial judges erring on the side of caution in ruling on challenges for cause in criminal cases where a replacement can easily be obtained for a prospective juror of doubtful qualifications.

Trial judges should sustain challenges to jurors whose responses make questionable their impartiality. The time saved by not doing so is not worth the serious risk it involves to defendant's right to an impartial jury, which, if violated, inevitably results in having to try the case over again.

The judgment is reversed and the cause remanded for a new trial.

HIGGINS, BLACKMAR, DONNELLY and WELLIVER, JJ., and BARRETT, Senior Judge, concur.

BILLINGS, J., dissents in separate opinion filed.

RENDLEN, C.J., and GUNN, J., not sitting.

BILLINGS, Judge, dissenting.

I dissent.

In this case I would reaffirm and give real meaning to the phrase "very wide discretion" and defer to the ruling of the trial court.

In our review we are limited to the cold and impersonal printed word. The trial judge had the opportunity to hear the manner of speaking and observe the demeanor and countenance of Mrs. Thompson throughout her entire voir dire examination. Just as errors in the exclusion of potential jurors should always be made on the side of caution, appellate courts should exercise caution in substituting their judgment for that of the trial court in ruling challenges for cause. I would affirm.