STATE of Missouri,
Plaintiff-Respondent,

v.

George CAMPBELL,
Defendant-Appellant.

No. 51841.

Missouri Court of Appeals,
Eastern District,
Division Four.

Oct. 6, 1987.

Motion for Rehearing and/or Transfer
Denied Nov. 6, 1987.

———

Bernard Edelman, Clayton, for defendant-appellant.

William L. Webster, Atty. Gen., Jeffrey Philip Dix, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

CRANDALL, Judge.

Defendant, George Campbell, appeals from his conviction for attempted rape. He was indicted on two counts of attempted forcible rape, or, in the alternative, two counts of attempted rape. The victims were two girls, S.B., four years old, and C.H., three years old. The jury returned a verdict of guilty of the attempted rape of S.B. Defendant was sentenced to three years' imprisonment. We find that the trial court abused its discretion by overruling defendant's challenge for cause of one of the veniremen and therefore reverse and remand.

The trial court denied defendant's challenge for cause of Venireman Damico during voir dire examination, thus forcing him to use a peremptory strike. The following excerpts from the voir dire examination of Venireman Damico form the basis for defendant's claim of error:

[DEFENSE COUNSEL]: Does it bother any member of the jury panel who says to himself, "He has two separate counts of this. That must mean he did it. He's got two separate charges. One we can maybe ignore. Two are too much to ignore." Anybody who has that feeling?

&ast;  &ast;  &ast;  &ast;  &ast;  &ast;

THE COURT: Mr. Damico has his hand up.

[DEFENSE COUNSEL]: I'm sorry. I didn't see you back there. Do you have the same feeling or concern, sir?

VENIREMAN DAMICO: I have a feeling since it's two separate times and two separate people that I might have a little doubt in my own mind.

[DEFENSE COUNSEL]: Do you think that's just more happenstance or more than a coincidence?

VENIREMAN DAMICO: Could be, in my own mind.

[DEFENSE COUNSEL]: Since I don't know what's in your mind, I'm trying to find out and ask you for you to tell me what you think about that so I know how to address it.

VENIREMAN DAMICO: Maybe from what the doctors and whatever are coming in, these two separate incidences might have occurred at the hospital, or something, and I just could have a doubtful feeling that something might have

happened before I get on the jury panel, in my own mind, thinking because it is two separate charges and two separate people, you know. I have a doubt before I even sit down, thinking maybe he did do something.

[DEFENSE COUNSEL]: When you say, "a doubt," you mean that's your concern?

VENIREMAN DAMICO: A doubt of his innocence.

[DEFENSE COUNSEL]: You're concerned that maybe you're presupposing his guilt because of the fact he's charged with both of these separate incidents? Is that correct?

VENIREMAN DAMICO: I'm not saying I think he's guilty. I'm saying it might —the two separate charges might influence me, versus one. If he came in with one charge of attempted whatever, then I might not feel as if something might have happened; whereas, if it's two separate charges and two separate instances with the same man, I might have that feeling.

[DEFENSE COUNSEL]: You were told by the prosecutor and also by the Judge that my client is charged in four counts, but that I and II are alternative counts and III and IV are alternative counts, meaning that either he did this or he did this in Count I and II and either he did this or he did this in Counts III and IV. Does it cause you any concern that he's charged with doing things in the alternatives, either one way or the other? What do you think when you're told he's charged in the alternative counts?

VENIREMAN DAMICO: The number of counts doesn't bother me. It's just from what I understand, it's just a different degree or explanation of the crime itself that he's charged with.

[DEFENSE COUNSEL]: The State, by the indictment which is pending, has charged him with either committing a crime of attempted rape by forcible compulsion or committing the crime of attempted rape without forcible compulsion. Now, does it cause you any concern that they're charging him with do-

ing it either with compulsion or without forcible compulsion?

VENIREMAN DAMICO: Yes, if I think about it, because these are four year old girls.

[DEFENSE COUNSEL]: Do you think with the way you feel about the situation you would be uncomfortable if you were selected as a juror, or you could not render a fair and impartial verdict based upon the evidence?

VENIREMAN DAMICO: I think I could render a verdict, but I don't know to start with if I would be as impartial as I needed to be.

\*    \*    \*    \*    \*    \*

[PROSECUTOR]: Mr. Damico, you've heard the defense arguing. You know which way we're both coming from. What's your position? Are you going to be able to force the State or hold the State to its reasonable burden? The State has got to prove their case beyond a reasonable doubt. Whether it's one count or 20 counts, we've got to prove each count beyond a reasonable doubt, okay?

VENIREMAN DAMICO: Right.

[PROSECUTOR]: If there's certain evidence that affects both counts, then you're able to take that into consideration.

VENIREMAN DAMICO: Right.

[PROSECUTOR]: But if the evidence only affects one count, you can only treat that count separately. Do you understand?

VENIREMAN DAMICO: Right.

[PROSECUTOR]: Can you do that?

VENIREMAN DAMICO: I think I can. I'm not trying to prejudge. I just said I had a problem with the two counts.

[PROSECUTOR]: Would you have—is that problem going to prevent you from allowing the presumption of innocence to enshroud Mr. Campbell? Can you still presume him innocent until such time as you go to your jury room and then decide the case?

VENIREMAN DAMICO: I think so. I think so.

Without independently questioning Venireman Damico, the trial court denied defendant's challenge for cause.

The general principles of voir dire have been summarized in *State v. Smith*, 649 S.W.2d 417, 422 (Mo. banc 1983), *cert. denied*, 464 U.S. 908, 104 S.Ct. 262, 78 L.Ed. 2d 246 (1983), and bear repeating here:

> To protect the defendant's right to a jury free from objectively demonstrated and subjectively sensed partiality, he must be afforded a full panel of qualified veniremen from which to make his allotted peremptory challenges. While trial court's refusal to sustain a valid challenge for cause constitutes reversible error, it is well established that, the trial court has wide discretion in determining the qualifications of a venireman, and its decision thereon will not be disturbed absent a clear abuse of discretion and real probability of injury to the complaining party. A clear line cannot be drawn for all cases as to when a challenge for cause should be sustained; there will be instances in which an appellate court might have done differently but cannot say there was an abuse of discretion; each case must be judged on its particular facts; a determination by the trial judge of the qualifications of a prospective juror necessarily involves a judgment based on observation of his demeanor and, considering that observation, an evaluation and interpretation of the answers as they relate to whether the venireman would be fair and impartial if chosen as a juror. Because the trial judge is better positioned to make that determination than are we from the cold record, doubts as to the trial court's findings will be resolved in its favor. (Citations omitted).

The voir dire examination of Venireman Damico by defense counsel disclosed someone who honestly expressed an inability to give defendant a fair and impartial trial. The State concedes that the questioning by defense counsel may have uncovered a bias on the part of Venireman Damico. They argue that he was rehabilitated by the prosecutor's examination. We disagree.

Not once did Venireman Damico indicate that he could try the case impartially. At most, his answers to the prosecutor's questions indicated an understanding of anticipated instructions of law and a hope that he could overcome his bias against defendant. We acknowledge that prospective jurors rarely speak in absolutes when responding to questions on voir dire. Answers frequently are qualified by "I think," "I hope," or "I'll try." These answers are perhaps more truthful than an unqualified yes. In the context of this case, however, Venireman Damico's responses to the prosecutor's questions expressed uncertainty and did nothing to expunge the clearly articulated bias that he had previously expressed. He *hoped*, but never said he *would* be impartial. *See, e.g., State v. Hopkins*, 687 S.W.2d 188, (Mo. banc 1985).

We further note the absence of an independant examination by the trial court. Absence of such an examination justifies a more searching review by an appellate court of the challenged venireman's qualifications. *State v. Johnson*, 722 S.W.2d 62, 65 (Mo. banc 1986). Even if the trial court had entered into questioning in this case, it is doubtful whether Venireman Damico could ever have been rehabilitated as a prospective juror. Judicial economy would suggest that he simply should have been excused and replaced by someone from the jury pool.

This issue is one that is frequently raised in the appeal of a criminal conviction. It could be virtually eliminated as an issue if trial courts would heed the directive in *State v. Stewart*, 692 S.W.2d 295, 299 (Mo. banc 1985), and numerous other opinions and "sustain challenges to jurors whose responses make questionable their impartiality. The time served by not doing so is not worth the serious risk it involves to defendant's right to an impartial jury, which, if vitiated, inevitably results in having to try the case over again." If a venireman clearly indicates a bias, he should be excused.

We hold that the trial court abused its discretion in failing to sustain the challenge for cause to Venireman Damico.

We have examined defendant's second point and subpoints therein relating to the testimony of certain adult witnesses used to bolster the testimony of the child victims pursuant to Section 491.075 RSMo (1986). Defendant's claims of error are either unlikely to occur on retrial or are not properly preserved for appellate review. In view of our holding on point one, we decline to address the issues raised in point two.

The judgment of the trial court is reversed and the cause is remanded for a new trial.

SIMON, P.J., and GRIMM, J., concur.