STATE of Missouri, Respondent/Respondent,

v.

Mica RUSH, Defendant/Appellant.

No. 62234.

Missouri Court of Appeals, Eastern District, Division One.

Oct. 5, 1993.

**937**

Cynthia M. Krock, St. Louis, for defendant/appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Rudolph R. Rhodes, IV, Asst. Atty. Gen., Jefferson City, for respondent/respondent.

REINHARD, Judge.

Defendant appeals his conviction by a jury for property damage in the second degree, § 569.120, RSMo 1986, and two counts of violation of an order of protection, § 455.085, RSMo Supp.1992.[1] The trial court sentenced him as a persistent and Class X offender to six months' imprisonment on the property damage conviction, and one year's imprisonment for each of the violation of order of

1. In addition, defendant was acquitted on two counts of assault in the second degree, § 565.-

060, RSMo 1986.

protection counts. These sentences are to run consecutively, for a total sentence of two and one-half years. We affirm.

The evidence reveals that on October 31, 1991, defendant and victim had been married for five years. Victim had a full order of protection effective against defendant. On the morning of October 31, 1991, victim telephoned her apartment on Kingsbury from work. Defendant answered the phone and, during the course of the phone conversation, defendant threatened victim. Defendant did not have victim's permission to be in the apartment. Victim telephoned the police and then left work to go to her apartment on Kingsbury.

When she arrived, defendant and two police officers were at the apartment. Victim found her floor-model television and microwave near the front door. Some of victim's clothes were piled in the living room. A suitcase containing defendant's clothes was in the lobby of the apartment. Victim had not left those items in those locations.

Victim then left her apartment and drove her Ford Granada to her parents' home in order to borrow her father's pickup truck. She left the Granada at her parents' home and returned to her apartment, accompanied by her mother.

Officer Daryle Noble met victim and her mother at the Wellston loop and followed them to victim's apartment. Officer Noble was in uniform and in a marked police car. Victim showed Officer Noble the order of protection. Defendant was no longer in the apartment when the trio arrived. Victim and her mother loaded the floor-model television, a nineteen-inch television, and the microwave into the back of the pickup truck. While moving these items, the women observed defendant drive by in victim's Granada. Victim pointed this out to Officer Noble, who also saw defendant driving the car. Victim and her mother left with the loaded pickup. Officer Noble followed in his police car. While victim was stopped at a traffic light, defendant crashed the Granada into the side of the

pickup and then jumped out of the car, brandishing a tire iron. Defendant climbed into the bed of the pickup and smashed the nineteen-inch television with the tire iron. Officer Noble arrested defendant.

Defendant's first point on appeal alleges the trial court erred in denying defendant's motion to strike Venireperson Mary Nagl for cause. Defendant maintains Ms. Nagl should have been struck for cause due to her response that she would require defense counsel to put on evidence, when the burden of proof lies with the prosecution.

The following exchange occurred during voir dire:

[Defense Counsel]: Is there anybody who's going to require me to prove [defendant]'s innocence; if so, please raise your hand? I take it everyone understands that it is upon [the prosecutor] to prove beyond a reasonable doubt that Mr. Rush is guilty and that the defense, that me as the defense lawyer, are not required to prove anything or for that matter to put on any evidence. Ms. Nagl.

VENIREPERSON NAGL: No.

[Defense Counsel]: Ma'am, are you going to require me to put on any evidence in this case to return a verdict?

[Prosecutor]: Your Honor, I again have to object based on they are not instructed as to what the law is on that matter.

THE COURT: Why don't you add if the Court's instructions don't require that.

[Defense Counsel]: Ms. Nagl, the Court will instruct you that the defense is not required to put on any evidence. Would you require me to put on evidence in order to return a verdict in this case? Do you understand what I'm asking? If you don't, let me know and I'll—

VENIREPERSON NAGL: You mean like if the other lawyer, he has to prove—I kind of, you know—ask me again maybe, you know.

[Defense Counsel]: Okay. The State's brought these charges here and they must prove them beyond a reasonable doubt. The Court will instruct you that the defense is not required to put on any evidence. He brought the charges as the

prosecutor, it's all up to him to bring in the witnesses and to prove the case beyond a reasonable doubt. My question is really are you going to require me to put on evidence?

VENIREPERSON NAGL: Yeah.

[Defense Counsel]: Thank you, ma'am. Anybody else feel the same way as Ms. Nagl; if so, please raise your hand?

[Prosecutor]: Your Honor, may we approach the bench please?

(Counsel approached the bench and the following proceedings were had outside the hearing of the panel:)

[Prosecutor]: Your Honor, not discussing the motives of my opponent, I believe that the question is misleading in that they will be instructed or—or can be instructed that the State has the burden of proof. If he's asking—

THE COURT: They have already been told that since I read that MAI–CR3d.

[Prosecutor]: I understand, but the question is if he's asked: Will you require me to put on evidence, that is a matter strictly instructed on the law, and I think the only proper question is can they follow that instruction, otherwise it seeks a commitment as to what they will or will not require and I think it's misleading.

THE COURT: That's why I phrased it if the instructions don't require it, because I don't think she—what they say is the one side is not required to make an opening statement. They don't say anything about being required to put on evidence, and that's why I said if the instructions don't require him to put on evidence. This is like a lot of other things—taking the stand—that if they don't understand the law they will probably answer that way. The person won't be struck for cause if they say to anybody upon being apprised that that's the law they can then follow it because it's—it's something that can confuse them. I don't think the lady understands that that's not required by the law. But you can come back in your half and ask. Be better to shorten this if you tell them that the law doesn't require that, you know. Let's go on.

(The proceedings returned to open court.)

[Defense Counsel]: Ladies and gentlemen, just to clarify, the law does not require that the defense put on any evidence. Is there anyone who's going to require me to do that in order to return a verdict despite the Judge's instructions in that area; if so, please raise your hands? Okay, I see no hands. Thank you.

\* \* \* \* \* \*

THE COURT: Let me clear up one thing. Ms. Nagl, did you say that you would require the defense to put on evidence?

VENIREPERSON NAGL: (Nods.)

THE COURT: Now after that [Defense Counsel] pointed out that that law does not require that at all, and then he asked another question after saying that the law doesn't require that and no one raised their hand. You understand the law does not require that. Now can you follow that law and not require him to put on any evidence?

VENIREPERSON NAGL: Yeah.

THE COURT: Any question about that?

VENIREPERSON NAGL: No.

The trial court denied defense counsel's motion to strike Ms. Nagl for cause, noting Ms. Nagl had unequivocally indicated her ability to follow the law.

■ The trial court has broad discretion in determining the qualifications of a prospective juror. *State v. Mahurin*, 799 S.W.2d 840, 845 (Mo. banc 1990). This court will not disturb that ruling absent a clear abuse of discretion. *Id.* The trial judge is in a unique position to evaluate the intangibles indicative of a person's qualifications as a prospective juror. *Id.*

■ The critical issue is whether the venireperson stated, in unequivocal terms, whether she could follow the instructions of the court and would evaluate the evidence impartially and fairly. *State v. Sanders*, 842 S.W.2d 916, 919 (Mo.App.E.D.1992).

Defendant principally relies upon *State v. Stewart*, 692 S.W.2d 295 (Mo. banc 1985). In that case, our Supreme Court held the trial

court committed reversible error by forcing a defendant to use a peremptory strike on a venireperson whose answers in voir dire evidenced an expectation that the defendant would put on evidence. *Id.* In *Stewart*, Venireperson Thompson never unequivocally stated she would not require the defendant to put on evidence. In fact, she repeatedly indicated she would prefer defendant do so. *Id.* at 296–298. *Stewart* is distinguishable from the instant case in that the venireperson in *Stewart* persisted in her belief the defendant should testify and present a defense even after the court and the prosecutor explained the law did not require such actions. In the instant case, Venireperson Nagl made no such statements and gave no indications she persisted in her belief following a thorough explanation of the law by the trial court. In fact, Venireperson Nagl indicated she had reversed her earlier position and would not require defendant to put on any sort of defense. We do not find there was a clear abuse of discretion by the trial court. Point denied.

■ Defendant's second point on appeal alleges the evidence at trial was insufficient to prove beyond a reasonable doubt that defendant was guilty of violating the order of protection. When determining the sufficiency of the evidence for the purposes of sustaining a criminal conviction, we must accept as true that evidence which tends to prove the defendant's guilt, and indulge all reasonable inferences which support the verdict. *State v. Davis*, 824 S.W.2d 936, 941 (Mo.App. 1992). We must ignore all contrary evidence and inferences. *Id.* We look only to whether there was sufficient evidence from which reasonable persons could have found the defendant guilty as charged. *Id.*

■ The parties stipulated that the order of protection was served on defendant. Victim testified to acts by defendant which were sufficient to constitute a misdemeanor violation of the statute. Defendant argues in his brief that the State failed to prove that the order was in full force and effect on October 31, 1991. In his brief he contends that "[t]o meet its burden of proof, the state must prove that the Order was in full force and

effect at the time of the alleged violation, October 31, 1991." Defendant relies upon Chapter 455 of the Missouri Revised Statutes, which governs orders of protection. Section 455.060.4, RSMo Supp.1992, provides that "any order of protection shall terminate, unless otherwise provided by law when a decree of dissolution of marriage or legal separation becomes final." Defendant argues "[victim] testified that she and [defendant] were legally separated at the time of the two violations of the Order of Protection. Thus, under § 455.060.4, the Order terminated upon the legal separation of the parties."

We note that a person legally separated or divorced can *obtain* an order of protection. § 455.020.1, RSMo Supp.1992. However, if a husband or wife obtains an order of protection during the marriage, as here, it terminates when a dissolution or legal separation decree becomes final. § 455.020.1, RSMo Supp.1992. Victim testified that she and defendant were married on October 31, 1991, the date of the offense. She said that they were divorced *after* that date. The order of protection was issued on August 6, 1991.

During her testimony the following exchange occurred:

[Prosecutor]: How did you know Mr. Rush?

VICTIM: I was once married to Mica Rush.

[Prosecutor]: Now you need to keep your voice—maybe sit a little forward.

VICTIM: Okay. I was once married to Mica Rush.

[Prosecutor]: On October 31st of last year were you still legally married to him?

VICTIM: Yes, we were.

[Prosecutor]: And did you get a divorce a short time after that?

VICTIM: Yes, I did.

[Prosecutor]: And on October 31 of 1991 were you living with him?

VICTIM: No, I was not.

[Prosecutor]: Where were you living at that time?

VICTIM: 5931 Kingsbury.

[Prosecutor]: And previous in your marriage had you lived there with Michael?

VICTIM: Yes.

[Prosecutor]: Now again, concerning October 31 of 1991, had you obtained anything from a court here in St. Louis pursuant to any separation or problems that you had in your marriage?

VICTIM: Yes.

[Prosecutor]: What was that?

VICTIM: Umm, an order of protection, and at that time we was legally separated.

[Prosecutor]: Okay. Were you working with the lawyer with your marital problems?

VICTIM: Yes, I was.

[Prosecutor]: All right. Now when you got that order of protection did you come downtown to get that?

VICTIM: Yes.

[Prosecutor]: Did you go in front of a judge to get that?

VICTIM: Yes.

[Prosecutor]: And when you got an original order was that a full order originally or was it a part time or short term order?

VICTIM: Full order.

[Prosecutor]: Okay. And at the time on October 31 of 1991 did you have a full order of protection against Mica Rush?

VICTIM: Yes.

Victim's testimony does not indicate that she had obtained a legal separation since the issuance of the order in August. She testified that at the time the order was issued "we [she and defendant] was legally separated." Thus, even had a final decree of legal separation existed at the time the order of protection was issued, the order of protection would not have been barred for that reason. There is no evidence that the marriage was dissolved or a legal separation had become final at the time of the offense.

In addition, it appears to us that the victim was unaware of the legal definition of the term "legally separated" and instead used the term in the layman's sense of a married

couple no longer living together. Point denied.

Judgment affirmed.

CRANDALL, P.J., and CRIST, J., concur.