STATE of Missouri, Plaintiff–
Respondent,

v.

James Earl FORTNER, Defendant–
Appellant.

No. 24294.

Missouri Court of Appeals,
Southern District,
Division Two.

Sept. 5, 2002.

Nancy A. McKerrow, Asst. Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Richard A. Starnes, Asst. Atty. Gen., Jefferson City, for respondent.

JOHN E. PARRISH, Judge.

James Fortner (defendant) was convicted following a jury trial of statutory sodomy in the first degree. § 566.062.[1] He appeals contending the trial court erred by failing to grant a challenge for cause to a juror and a motion to disqualify the trial judge. This court affirms.

Defendant does not challenge the sufficiency of the evidence. His claims of trial court error are directed solely to circumstances related to jury selection and the trial judge's decision not to grant the motion to disqualify. The recitation of facts is, therefore, limited to the circumstances related to those issues.

Defendant's first point on appeal asserts the trial court erred in denying defendant's motion to strike a member of the venire for cause because he "never unequivocally stated that he would not consider the fact that [defendant] did not testify as evidence of guilt." The venireperson about whom defendant complains in Point I was Joseph Robert Stevicks. Mr. Stevicks served as one of the jurors at defendant's trial.

The basis for defendant's allegation of error in Point I is questions asked to and answers given by Mr. Stevicks near the end of voir dire. The following colloquy occurred.

Q. [by defendant's trial attorney] . . . Does anybody else have any other questions about any of the questions that I've asked you today?

(Response)

[Defendant's attorney]: Yes, sir.

JUROR STEVICKS: Everybody knows that you're innocent until proven guilty. I think everybody—until proven that. I think everybody knows that. But I'm asking, if you're innocent and you know in your heart that you're innocent of the crime, that you did not commit it, why wouldn't you give yourself a chance to defend yourself?

[Defendant's attorney]: You mean why—

JUROR STEVICKS: Yeah. Why wouldn't you just stand up and say, Look, I didn't do it. [Sic] That's just what I want to ask.

[Defendant's attorney]: Um-hum.

JUROR STEVICKS: Under certain circumstances and stuff, but, you know, to me, I just—that's how I would do it. I'd take the stand and then tell my side of the story. That's just how I believe.

[Defendant's attorney]: Okay. Well, can you think of any reason why you wouldn't?

JUROR STEVICKS: Why I would not?

[Defendant's attorney]: Yeah. Can you think—I mean, I know you're not a lawyer, so I don't expect you to know the lawyer reasons.

JUROR STEVICKS: No. I don't know every stipulation why I wouldn't. Probably like something that deals with

---

1. References to statutes are to RSMo 1994.

DNA or something. I don't know anything about that.

[Defendant's attorney] Maybe some kind of evidence would come in or something like that?

JUROR STEVICKS: Yeah. But time frames, I'm pretty good with numbers. And I'm pretty good at remembering where I was at a certain time. And all you'd have to give was just your story straight, you know, and just tell the honest truth. So I'm just—

THE COURT: One thing we can't do in any trial is speculate. All right? And I think I've instructed you, or will instruct the jury as to not to speculate with respect to certain answers to questions. All that you're asked to understand at this point is that one of the rights that everyone has when they're at trial is to choose whether or not they may testify. He's not made that choice yet.

JUROR STEVICKS: I understand that.

THE COURT: You've all indicated that that is his choice. But you should not speculate as to the reason the choice is made either way. Would you agree with that?

JUROR STEVICKS: Yes.

THE COURT: All right.

JUROR STEVICKS: I just had a question.

[Defendant's attorney] And that's a good question. There can be, and like the Judge said, it's not going to be a part of the trial for you to figure out why or why not he testifies or doesn't testify. You understand that.

JUROR STEVICKS: Yes.

[Defendant's attorney]: That's nothing that the State has to prove.

JUROR STEVICKS: Correct.

. . .

[Defendant's attorney]: . . . In that case where you think that would be the proper way to defend yourself—

JUROR STEVICKS: That's just a personal feeling.

[Defendant's attorney]: That's your personal belief.

JUROR STEVICKS: Yes.

[Defendant's attorney]: Sure. I understand that. In this case, say you hear all the State's witnesses and they rest, the State rests, and they're done, and [defendant] doesn't testify. Are you going to expect him to have testified before you can find him not guilty?

JUROR STEVICKS: No. No, I'm not going to speculate on that.

[Defendant's attorney]: You won't speculate.

JUROR STEVICKS: No. That's his right not to.

[Defendant's attorney]: You're just stating your own personal belief.

JUROR STEVICKS: Yes. I just had a question about that.

Mr. Stevicks was the last venireperson to be questioned. He was "No. 23" on the trial court's jury list.

At the conference following voir dire, defendant moved to strike "No. 23" for cause. Defendant's trial attorney asserted two reasons for seeking No. 23's removal for cause. He referred to an inquiry "at the bench" concerning a disclosure that the venireperson, as a "young teen," had a friend who had been a victim in a sexual related case. The attorney told the trial court:

He did state that it was a traumatic event in his life, after you asked him that question. That case ended in nothing more, I guess, than an ex parte, or an order of protection. Couple that with the question he asked about, If [sic] it

was me, basically, I would expect to get up and tell my side of the story. I would say that with the combination of those, he's close enough to the line that he should be stricken for cause.

In ruling on defendant's motion to strike No. 23 for cause, the trial court stated:

Well, Number 23, in talking with him at the bench, he seemed unaffected. And by that I mean, often we see jurors that when they begin talking of their past experiences, display some emotion. He didn't. He seemed to want to make sure that we knew about that incident and his involvement as a witness to it. He expressed some dissatisfaction with what happened to the defendant in that case, but he said that he could disassociate that experience from his obligation as a juror and could be fair to both sides. With respect to his answers regarding the failure of the defendant to testify, I think that's brought on in part by your discussion of the need to maintain their common sense.[2] And he expressed his common sense. He said if it were him, and this—and he was not guilty, he can't understand why he would not testify. And in response to that he was asked, Did [sic] he understand that all defendants, everyone has a right not to testify? Yes. Would he understand that the State has the burden to proceed and prove his guilt, and the defendant does not have to prove anything? Yes. I think when you ask these people to bring their common

sense with them, you spend time talking about common sense, you're inviting some discussion about what they would do if it happened to them. And that's all I think he expressed. So Number 23 is not stricken.

Defendant relies on *State v. Stewart*, 692 S.W.2d 295 (Mo. banc 1985), in support of Point I. He argues that *Stewart* is analogous to this case. In *Stewart*, a venireperson, Mrs. Thompson, was asked a series of questions relating to a defendant's choice not to testify in his criminal case.

At the outset of the questioning, Mrs. Thompson, in response to the question "Would you expect him to have to testify in this matter?", answered "I would think so." When asked if she felt "he should have to get up here again and deny it?", she replied, "I would just like to hear his side of the story." Asked what she would think if defendant did not testify, she said, "I couldn't say—I could not honestly say"; that as to whether she might think he was trying to hide something, "Possibly, yes"; that whether the "bottom line" if he did not testify was that she would have some real problems, she said "I think so", and finally, "being really fair", would she be more apt to think he was guilty if he did not testify, she answered, "Well, if you put it that way, yes."

692 S.W.2d at 298.

*Stewart* points out:

2. Shortly before the discussion that ensued between defendant's trial attorney and Mr. Stevicks, the attorney stated:

Common sense. Everybody had it when we walked in here to some degree or another. Right? The reason for jury trials is so that, in this case, [defendant] will be judged by a jury of his peers of citizens. And when you walk in this room, you bring with you your education, your life experience, work experience. You bring into this room all

the things that make you up as a person. Your opinions, your dislikes, your likes. And if we express those things, common sense—I know Juror Number 41, we talked a little bit about that, about common sense. Because you're sitting in a courtroom with lawyers and it's formal and we're reading instructions and telling you the law and have witnesses and bailiffs and deputies, are you going to lose your common sense because of that?

Mrs. Thompson said flatly that if defendant did not testify she would be more apt to think he was guilty, and even when she was answering counsel for the state about her understanding that the state was required to establish guilt beyond a reasonable doubt and that she would judge the state's case on its own merits, she concluded by saying she still would like for the defendant to testify. *Id.* at 299. *Stewart* concluded that Mrs. Thompson's answers to questions on voir dire demonstrated "that a defendant's failure to testify would, per se, be an indication to her that he was guilty of the offense charged and a factor which she would consider in arriving at a verdict." *Id.* *Stewart* held that the failure of the trial court to grant the challenge for cause was error. *Stewart* acknowledged, however, that "[i]n determining when a challenge for cause should be sustained, each case must be judged on its facts." *Id.* at 298.

This court does not find Mr. Stevicks' answers to questions asked during voir dire to be a manifestation that he would have required defendant to testify in this case in order to find defendant not guilty. Prior to the voir dire colloquy on which defendant relies as the basis for Point I, defendant's trial attorney elicited a statement from another venireperson that a defendant in a criminal case has a right to remain silent. The attorney then told the panel it was defendant's constitutional right not to testify. He asked the panel, "Does anybody here expect the defendant to testify in his own defense?" None of the panel responded. Defendant's attorney acknowledged that no hands were raised. He continued, "[T]he State has witnesses who are going to say that [defendant] did a bad thing. At that point would anybody expect him to get up and explain his side of the story?" The attorney told the panel:

I guess, then, from your lack of response that everybody understands that he doesn't have to say one single word. He doesn't have to say one word for the next few days. And he can still be found not guilty if the State doesn't prove its case. Everybody understand that?

The transcript reflects the jurors nodded. Defendant's attorney added, "I see no hands. Nobody has any questions about that?" There was no response.

Further, during the course of the exchange between defendant's trial attorney and Mr. Stevicks, the attorney pointed out to Mr. Stevicks that there could be "lawyer reasons" why defendant might choose not to testify. Mr. Stevicks acknowledged he had no knowledge about that. The trial judge then interjected telling Mr. Stevicks, "All that you're asked to understand at this point is that one of the rights that everyone has when they're at trial is to choose whether or not they may testify. He's not made that choice yet." Mr. Stevicks answered, "I understand that."

Defendant's attorney emphasized to Mr. Stevicks, "[L]ike the Judge said, it's not going to be a part of the trial for you to figure out why or why not he testifies or doesn't testify. You understand that." Mr. Stevicks answered, "Yes." Mr. Stevicks was asked, "Are you going to expect [defendant] to have testified before you can find him not guilty?" Mr. Stevicks answered, "No. No, I'm not going to speculate on that."

Unlike the venireperson in *Stewart,* Mr. Stevicks did not state he would be more apt to think defendant was guilty if defendant did not testify. Further, the jury had been instructed at the beginning of trial that it was the jury's duty to follow the law the court would give in the instructions even if the jury disagreed with the law. The venire panel was asked if any of them

would not be willing to follow all instructions the trial court would give them. The record does not reflect a response by any member of the panel.

Instruction No. 7, given at the close of the evidence told the jury:

> Under the law, a defendant has the right not to testify. No presumption of guilt may be raised and no inference of any kind may be drawn from the fact that the defendant did not testify.

"The jury is presumed to have followed the court's instructions." *Rains v. Herrell,* 950 S.W.2d 585, 588 (Mo.App.1997).

> ... Because it is in the best position to evaluate the venireperson's commitment to follow the law, the trial court has broad discretion in determining the qualifications of prospective jurors. Its ruling on a challenge for cause will not be disturbed on appeal unless it is clearly against the evidence and constitutes a clear abuse of discretion.

*State v. Hauserman,* 64 S.W.3d 893, 896 (Mo.App.2002), *citing State v. Kreutzer,* 928 S.W.2d 854, 866 (Mo. banc 1996), *cert. denied,* 519 U.S. 1083, 117 S.Ct. 752, 136 L.Ed.2d 689 (1997). The trial court ruling denying the challenge to Mr. Stevicks is consistent with the evidence. It was not an abuse of discretion. Point I is denied.

■ Point II asserts trial court error in denying a motion to disqualify the trial judge. It asserts the trial court erred in denying the motion "without a hearing, and in refusing to recuse himself ... in that the fact that the trial court knew the victim because she had been a participant in his Optimist League Basketball program for three years was enough to cause any reasonable person to find an appearance of impropriety in the trial court's remaining on the case."

The alleged victim in this case was under the age of twelve. On August 21, 2000, the trial court conducted what it described on its docket sheet as a "491 Hearing." This court infers from that characterization that the purpose of the hearing was to ascertain whether statements of the victim would be admissible at trial pursuant to § 491.075.1. Three witnesses testified, Bonnie Mathis, Lynn Slaussen, and Toby Skaggs, the victim's mother.

Mrs. Skaggs was the last to testify. At the conclusion of questioning by the prosecuting attorney and the defense attorney, the trial judge inquired of Mrs. Skaggs:

Q. Ms. Skaggs, you and I know each other, don't we?

A. Yes.

Q. That's because your daughter plays basketball, doesn't she?

A. Um-hum, yes.

Q. And for three years she played basketball in the Optimist Basketball Program, right?

A. Yes.

Q. And I run that program, don't I?

A. I believe you do.

Q. Okay. So you and I have at least met during that process, haven't we?

A. Yes.

Q. But we've never discussed this case, have we?

A. No.

Q. As far as you know, we never even knew each other was involved in this case until this morning, did we?

A. No. No. That's when I recognized you.

After announcing that the witnesses whose testimony had been given would be permitted to testify at trial with respect to statements the victim made to them, the trial judge stated to the attorneys:

Now, gentlemen, if you wish to make a record, you may. I honestly didn't rec-

ognize the name of this victim until this morning, and then when I saw her mother I remembered that I had had this girl in a program of the Optimist Club Basketball in Rolla for three years. However, I had no knowledge that she was involved in this case. I have no reason to disqualify myself, but if either of you wish to make a record or make a motion, you may do it now or later. Anything further on this motion?

The attorneys had nothing further nor did they request any action relative to the trial judge's acquaintance with the victim and her mother.

A motion entitled "Defendant's Motion to Disqualify Judge" was filed November 28, 2000. It states:

Comes now Defendant, by and through counsel, and moves for disqualification of current trial judge, pursuant to Section 545.660(3), RSMo 1994.

Section 545.660 RSMo 1994, provides:

When any indictment or criminal prosecution shall be pending in any circuit court or criminal court, the judge of said court shall be deemed incompetent to hear and try said cause when the judge is in any wise interested or prejudiced, or shall have been counsel in the cause.

As grounds for this motion the defendant states:

1. Judge Wiggins is the Judge of record in the above-captioned cause.

2. Judge Wiggins knows the complaining witness, S.S. (a juvenile), by his involvement in a recreational basketball league, and is prejudiced.

WHEREFORE, the defendant prays Judge Wiggins be disqualified, and this cause be transferred to another Judge of the 25th Judicial Circuit of Missouri.

A docket entry in the circuit court file dated December 8, 2000, states "Motion for Change of Judge Overruled/Denied."

■ The record on appeal reflects no request by defendant to call the motion for hearing or to present information in support of his motion to disqualify Judge Wiggins other than the judge's statements at the conclusion of the August 21, 2000, hearing; neither does the record suggest what would have been disclosed had there been a hearing. The obligation to make a record concerning issues a party may wish to present on appeal is on that party. *Chilton v. Gorden*, 952 S.W.2d 773, 777 (Mo.App.1997). There having been no request for a hearing before the trial court, this court is not willing to convict that court of error for having ruled on the motion without *sua sponte* scheduling a hearing.[3]

■ The trial judge elicited testimony from the alleged victim's mother that disclosed they were acquainted. "An acquaintanceship between a judge and a victim is not a basis for requiring the judge to disqualify." *State v. Ayers*, 911 S.W.2d 648, 651 (Mo.App.1995). This court finds the same rationale applicable to a casual acquaintanceship between a trial judge and

---

**3.** Arguably, defendant's complaint that the ruling was made without a hearing was not preserved for appellate review. The allegation of error in defendant's motion for new trial does not include the failure to grant a hearing as a ground for new trial. The motion for new trial argues only that the motion to disqualify should have been granted. *State v. Phelps*, 816 S.W.2d 227, 229 (Mo.App. 1991). " '[A]n appellate court will not convict the trial court of error on an issue which was not put before it.' " *In re Estate of Mounts*, 39 S.W.3d 499, 503 (Mo.App.2000), *quoting Boshers v. Humane Soc. of Missouri, Inc.*, 929 S.W.2d 250, 254 (Mo.App.1996).

a victim's mother. Point II is denied. The judgment is affirmed.

PREWITT, P.J., and RAHMEYER, C.J., concur.