STATE of Missouri, Respondent,

v.

Geraldine CLARK–RAMSEY,
Appellant.

No. WD 60480.

Missouri Court of Appeals,
Western District.

June 28, 2002.

Tara L. Jensen, Asst. Appellate Defender, Kansas City, for Appellant.

Jeremiah W. (Jay) Nixon, Attorney General, Audra L. Charlton, Asst. Attorney General, Jefferson City, for Respondent.

Before BRECKENRIDGE, P.J., HAROLD L. LOWENSTEIN and SMART, JJ.

HAROLD L. LOWENSTEIN, Judge.

During voir dire of prosecution for drug charges, a venireperson gave equivocal responses to questions concerning the party bearing the burden of proof and the defendant's right not to testify. The trial judge overruled the defendant's motion to strike for cause. That ruling is at the heart of the defendant's appeal.

## Factual and Procedural History

The appellant, Geraldine Clark–Ramsey, was charged with possession of a controlled substance, in violation of § 195.202, RSMo.2000. The information alleged that the appellant was a prior drug offender. She was tried and convicted by a jury and sentenced to ten years. The sufficiency of the evidence is not disputed. The underlying facts of the cause are not relevant to the dispositive issue on appeal, so the following recitation will be brief.

In July of 2000, two police officers were assisting an elderly woman in Kansas City by removing a car illegally parked in her driveway. About fifteen minutes after the officers arrived, the appellant pulled up and parked in front of their patrol vehicle. One of the officers "ran" the appellant's plates and learned that there was a felony stop order, which is an order placed by a detective who believes the vehicle may have been involved in some way with a crime.

As a result, the officers asked the appellant and her passenger to exit the vehicle. The appellant was asked to stand at the driver's side rear quarter panel, and the passenger was directed to stand on the passenger's side. The officers then searched the vehicle but found nothing. Afterwards, one of the officers noticed a crumpled up tissue containing several rocks of crack cocaine lying immediately to the left of the appellant's feet. The officers did not recall the tissue being there earlier.

The appellant was placed under arrest for possession of a controlled substance. Pursuant to a search incident to an arrest, the officers searched the appellant's purse and found traces of cocaine.

Details surrounding voir dire are set forth below.

## Standard of Review

■ "Venirepersons may be excluded from the jury when their views would prevent or substantially impair the performance of their duties as jurors in accordance with the court's instructions and their oaths." *State v. Smith,* 32 S.W.3d 532, 544 (Mo. banc 2000)(citing *Wainwright v. Witt,* 469 U.S. 412, 424, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985); *State v. Rousan,* 961 S.W.2d 831, 839 (Mo. banc 1998)).

■ "No clear line can be drawn as to when a challenge for cause should or should not be sustained; each case must be judged on its particular facts." *State v. Draper,* 675 S.W.2d 863, 865 (Mo. banc 1984). "A challenge for cause will be sustained if it appears that the venireperson cannot 'consider the entire range of punishment, apply the proper burden of proof, or otherwise follow the court's instructions ...' " *Smith,* 32 S.W.3d at 544 (quoting *Rousan,* 961 S.W.2d at 839). An accused must be afforded a full panel of qualified jurors before he is required to expend his peremptory challenges and failure of the trial court to grant a legitimate challenge for cause is reversible error. *State v. Lingar,* 726 S.W.2d 728, 734 (Mo. banc 1987).

■ "The qualifications of a prospective juror are not determined conclusively by a single response, 'but are made on the basis of the entire examination.' " *State v. Clayton,* 995 S.W.2d 468, 475 (Mo. banc 1999) (citations omitted). "The trial court is in the best position to evaluate a venireperson's commitment to follow the law and is vested with broad discretion in determining the qualifications of prospective jurors." *Id.; Rousan,* 961 S.W.2d at 839. The ruling will not be disturbed on appeal unless it is clearly against the evidence and is a clear abuse of discretion. *Rousan,* 961 S.W.2d at 839.

## The Voir Dire

■ In her sole point on appeal, the appellant argues that the trial court abused its discretion and committed reversible error by overruling her challenge for cause of venireman Donald Ebberts because Ebberts stated on the record that an innocent person should want to vindicate herself; that he thought the appellant should provide evidence of her innocence (and otherwise seemed confused about which party bears the burden of proof); and that if she chose not to testify, he would want to know why.

Following are excerpts in the transcript of the colloquy between Ebberts and the attorneys conducting voir dire:

**Prosecutor:** Is there anyone in this courtroom who has had a family member or close friend convicted of a crime here? Well, on state charges? ...

**Ebberts:** My cousin was convicted for drug charges. He's deceased now, but he did serve time. They went through all the process and everything....

**Prosecutor:** Given that experience, do you think you can be fair and impartial in this case?

**Ebberts:** Yes.

...

**Prosecutor:** Is there anyone on this panel who themselves or have members of the family that work for an attorney's office? ...

**Ebberts:** Don Ebberts, and my brother-in-law is an attorney over in Leavenworth County.

**Prosecutor:** What kind of law does he practice?

**Ebberts:** A little bit of everything. Whatever brings in a buck. I know he's done some criminal and he's done inheritance. He's done other cases, so whatever comes along.

**Prosecutor:** Does he tell you any stories about criminal law or procedure or courtroom agreements?

**Ebberts:** No.

**Prosecutor:** Do you think you could be fair and impartial in this case?

**Ebberts:** Yes.

. . .

**Defense Counsel:** Does it seem unfair that the burden of proof is on the prosecution, which means that the defense doesn't have to prove anything? Does that seem unfair?

**Ebberts:** You've got to prove that she's innocent.

**Defense Counsel:** I do?

**Ebberts:** Well, she's your client. I mean right.

**Defense Counsel:** She is.

**Ebberts:** And wouldn't you want to see her innocent?

**Defense Counsel:** Well, I thought she was innocent.

**Ebberts:** Oh, okay, until proven guilty. But don't you try to—

**Defense Counsel:** Well, we talked about what assumptions you could make in order to assume her innocent, right?

**Ebberts:** Right.

**Defense Counsel:** And you're going to listen to the evidence?

**Ebberts:** Right.

**Defense Counsel:** And she is innocent?

**Ebberts:** Until proven guilty.

**Defense Counsel:** Until proven guilty. So, in other words, with no evidence right now, if we were to take a vote—

**Ebberts:** She'd be innocent.

**Defense Counsel:** She would be innocent? You would vote that way?

**Ebberts:** Right.

**Defense Counsel:** Anybody else disagree? I see no hands. Now you bring me to a good question, and that is the question of what you think my job is and what I have to prove.

**Ebberts:** You've got to prove to me with your witnesses, if you have any or whatever, her innocence, that she didn't do the crime that she's accused of.

**Defense Counsel:** Then that kind of takes me back to my previous question I just asked: Would the number of witnesses that I call make a difference to you?

**Ebberts:** No, not if you had enough information you could tell me something.

**Defense Counsel:** Would it matter who called witnesses to you?

**Ebberts:** No.

**Defense Counsel:** So you would expect me to do something rather than sit here and play Tic–Tack–Toe?

**Ebberts:** Right.

**Defense Counsel:** But you wouldn't necessarily require me to bring in any certain number of witnesses?

**Ebberts:** No.

. . .

**Defense Counsel:** When anyone is charged with a crime, they have a decision to make. The first one is whether to plead guilty or innocent. Geraldine Clark–Ramsey has pled innocent in this case.

Now she has, as anyone in her situation, this decision to make, and she will make this in conjunction with her attorney, but it's ultimately her decision to make, whether she wants to take the stand and testify or not. No one has to take the stand to testify. No one can be forced to do so, but if she wants to, she can. My question to you is: Do you think that would be an easy decision for someone to make?

**Ebberts:** Don Ebberts. If a person is innocent, I wouldn't think it should be

any problem to them to get up on the stand and tell their point of view.

**Defense Counsel:** Well, let me ask you this: What if anyone is shy about getting up in front and talking to strangers and they look nervous because they're shy?

**Ebberts:** As a juror, I'd want to know that, that that would be the reason that she didn't get up, he or she didn't get up on the stand.

**Defense Counsel:** What if someone knows they're going to be cross-examined by a professional lawyer if they take the stand and testify and basically their job is to make them look like a fool? Would that be important in their decision-making?

**Ebberts:** Then I think that would the lawyer's job to kind of let her know that you're better off sitting down and letting me do the talking, if it's going to screw somebody up, you know, to where they look worse than they really are.

**Defense Counsel:** So somebody could make somebody look like a fool?

**Ebberts:** Oh, yeah.

**Defense Counsel:** Right?

**Ebberts:** Yeah.

**Defense Counsel:** Would that be important in making that decision to take the stand or not for you, if it were you?

**Ebberts:** For me, say I was the one that was going to be up on the stand? I'd still get up on the stand.

[Here the Defense counsel discussed this issue with another venireperson before returning to Ebberts.]

**Defense Counsel:** Mr. Ebberts, would guilt or innocence weigh in your mind on whether to take the stand to testify or not, and would that be your only consideration?

**Ebberts:** No, but I'd still want to know a little more detail if the person was shy, maybe, or something like that, because I think somebody, if they're that innocent—Myself, I would want to speak for myself. I wouldn't want somebody else to speak for me.

**Defense Counsel:** Other people are different from you?

**Ebberts:** Everybody is different.

During the attorneys' argument on challenges for cause, the defense attorney asserted that Ebberts should be dismissed on the grounds that he not only would require the defendant to prove that she was innocent, but he would also require the defendant to testify. The State responded that Ebberts:

> did say on several occasions that he could be fair and impartial, and additionally, when further inquiring about what he thought about if the defendant needed to take the stand or not, he commented that the attorney should help the individual make that decision and really seemed competent in that regard.

The court overruled the appellant's motion to strike for cause. The appellant did not use a peremptory strike on Ebberts, so Ebberts served on the jury. As such, there are two potential problems with Ebberts' answers. First, Ebberts seemed confused over which party had the burden of proof. Second, if the defendant would not take the stand, Ebberts wanted to know why.

### Analysis

■■■ "The critical question in a bias challenge is whether the venireperson unequivocally indicated an ability to evaluate the evidence fairly and impartially" *State v. Clark*, 55 S.W.3d 398, 404 (Mo.App. 2001) (citation omitted). Where a potential juror equivocates about his or her ability to be fair and impartial, a trial court has a duty to make an independent

inquiry. *Id.; State v. Wheat,* 775 S.W.2d 155, 158 (Mo. banc 1989)(trial court's duty of independent inquiry arises only where a venireperson equivocates about ability to be fair and impartial). "Where a venireperson's answer suggests a possibility of bias, but upon further questioning that person gives unequivocal assurances of impartiality, the bare possibility of prejudice will not disqualify such rehabilitated juror nor deprive the trial court of discretion to seat such venireperson." *State v. Bishop,* 942 S.W.2d 945, 949 (Mo.App.1997). Nonetheless, "[w]here a juror gives equivocal answers which reveal uncertainty as to his ability to be impartial, the absence of independent examination by a trial judge justifies a more searching review by an appellate court of the challenged juror's qualifications." *State v. Roark,* 784 S.W.2d 194, 197 (Mo.App.1989).

It is with this framework in mind, as well as the more general standard of review set forth above, that this court reviews the testimony of venireperson Ebberts.

### A. The burden of proof

The transcript shows that Ebberts was asked six questions about the burden of proof after he told the defense attorney that she had to prove that the defendant was innocent. The record also shows that in response to Ebberts' initial erroneous statement, the defense counsel attempted to rehabilitate the venireman by asking questions and reminding him about presumptions. The sixth question that the defense counsel asked was, "with no evidence right now, if we were to take a vote—." Ebberts interrupted and replied, "She'd be innocent." If the questioning had ended here, it would have appeared that after six questions, Ebberts understood that the State had the burden and had not yet met it. But further dialogue

indicates that Ebberts was still confused. The defense attorney again asked Ebberts what he thought her job was and what she had to prove. Ebberts replied, "You've got to prove to me with your witnesses, if you have any or whatever, her innocence, that she didn't do the crime she's accused of." The remainder of the dialogue on that issue does not show that Ebberts was rehabilitated.

At that point, then, the trial court had the duty to intervene and make further inquiries as to whether Ebberts understood which party had the burden. *Clark,* 55 S.W.3d at 404. The trial court did not make further inquiry, and the issue was left unresolved.

*State v. Weatherspoon,* 728 S.W.2d 267, 270 (Mo.App.1987), illustrates a proper route of handling cases where the venireperson does not understand the burden of proof. In *Weatherspoon,* the venireperson stated three times that she would require the defendant to present proof in order to find him not guilty. *Id.* However, the prosecutor rehabilitated the venireperson by asking her whether she could follow the court's instructions stating that the jury could not find guilt if the State did not prove guilt beyond a reasonable doubt and where the defendant provided no evidence. *Id.* The venireperson indicated time and again that she could follow the court's instructions and thus there was no reversible error. *Id.* at 272. *See also State v. Hicks,* 530 S.W.2d 396 (Mo.App.1975) (three venirepersons initially indicated that they would require defendant to meet burden of proving alibi but disavowed that view after being questioned about following the court's instructions on that issue).

In this case, there was no subsequent examination of Ebberts to determine whether he could follow the court's instructions as to the burden of proof. The record leaves Ebberts' equivocal statement

that the defense has to prove with witnesses or other evidence that the defendant did not commit the crime with which she is accused.

### B. The defendant's decision not to testify

Responses on the issue of whether Ebberts understood that the appellant need not have taken the stand and need not explain why are also disturbing. After the defense attorney explained that the decision is solely the defendant's and asked whether anyone on the venire panel thought it would be an easy decision, Ebberts replied that he did not think an innocent person would have a problem testifying. Again, the defense counsel posed six questions to Ebberts about the defendant's right not to take the stand, noting that a person might not take the stand because of nervousness or shyness. Defense counsel's explanation of the reasons why an accused would not testify are somewhat perplexing in view of the clear federal and state constitutional provisions on the subject.

Ebberts indicated that he understood those reasons, but also he said that he would still want to know the details of why the defendant did not testify. He was not rehabilitated on this issue. Again, at this point, it was the trial court's duty to intervene and make further inquiries as to whether Ebberts understood the defendant's right not to testify included not explaining why the defendant chose not to testify. *Clark*, 55 S.W.3d at 404.

A case with facts analogous to those in the case at bar is *State v. Stewart*, 692 S.W.2d 295 (Mo. banc 1985). In *Stewart*, the venireperson stated repeatedly that she would have difficulty in a criminal case where the defendant chose not to testify. *Id.* at 296–298. Towards the end of the dialogue between the venireperson and the

defense attorney, the venireperson was asked whether she would hold the fact that the defendant chose not to testify against him, and she stated no. *Id.* at 298. Nonetheless, the Supreme Court determined that the venireperson "never abandoned her belief that an innocent man would testify in his own behalf." *Id.* at 299. *See also Roark*, 784 S.W.2d at 196–97 (venireperson's response that a person ought to testify, "Constitution or not," was never sufficiently rehabilitated after he stated he "believed" he could follow court's instructions to the contrary) *and State v. Odom*, 712 S.W.2d 466, 468 (Mo.App.1986) (venireman's statement that he could "probably" disregard defendant's failure to testify was not enough to provide defendant "a full panel of qualified venireman from which to make his allotted peremptory challenges") (quoting *State v. Smith*, 649 S.W.2d 417, 422 (Mo. banc 1983)).

Similarly, in this case, though the dialogue is not as lengthy as in *Stewart*, the record indicates that Ebberts never disregarded or unequivocally disavowed his opinion that a person who was innocent would want to testify, and that if an accused person chose not to testify, as a juror, Ebberts would want to know why.

### Conclusions

The prosecutor's statement at the conference to hear motions for cause indicated that Ebberts had said "on several occasions" that he could be fair and impartial. While Ebberts did say twice that he could be fair and impartial, that response was given in two unrelated subjects: his cousin's conviction on drug-related crime and the fact that he had a brother-in-law practicing law. Ebberts never indicated whether he could be fair and impartial in the event that the appellant did not testify, nor does the record show that he understood the burden of proof and could be fair

and impartial given that the defense had no burden.

The transcript indicates that the voir dire lasted quite some time, and the judge apparently relied on the misstatement by the prosecutor. *See Bishop*, 942 S.W.2d at 949–50 *and State v. Holland*, 719 S.W.2d 453, 454–55 (Mo. banc 1986) (in both of these cases, the trial judge apparently either relied on misinformation provided by prosecutor during hearing on challenges for cause or mistakenly believed that other responses by venireperson were rehabilitative; both resulted in reversible error).

Although the standard of review is for a clear abuse of discretion, as noted above, "[w]here a juror gives equivocal answers which reveal uncertainty as to his ability to be impartial, the absence of independent examination by a trial judge justifies a more searching review by an appellate court of the challenged juror's qualifications." *Roark*, 784 S.W.2d at 197. For the two reasons discussed above, where Ebberts made equivocal statements regarding the burden of proof and the defendant's failure to testify, a review of the record indicates that Ebberts should have been stricken for cause.

This point is granted.

The cause is reversed and remanded for a new trial.

BRECKENRIDGE, P.J., and SMART, J. concur.